United States District Court
Southern District of Texas
**ENTERED**
May 07, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **LURETTA J. GARNER,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:20-CV-1958** |
| | § | |
| **ANDREW SAUL,** *Commissioner of* | § | |
| *Social Security Administration,* | § | |
| | § | |
| **Defendant.** | § | |

<u>**MEMORANDUM AND RECOMMENDATION**</u>

Plaintiff Luretta J. Garner ("Plaintiff") filed this suit against Defendant Andrew Saul ("Commissioner") seeking review of the denial of disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A). (Dkt. No. 1.) Pending before the Court[1] are the parties' cross-motions for summary judgment. (Dkt. Nos. 12 & 13.) Based on the briefing, record, and relevant law, the Court **RECOMMENDS** Plaintiff's Motion for Summary Judgment be **GRANTED**, Commissioner's Motion for Summary Judgment be **DENIED**, and the case be **REMANDED** for further administrative proceedings.

## I.    BACKGROUND

Plaintiff is a 56-year-old woman who served in the United States Navy during Operation Desert Storm and subsequently worked as a housekeeper at Veterans Affairs ("VA"). (R. at 249,

---

[1] On July 2, 2020, the District Judge referred this case to the undersigned for full pretrial management pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (Dkt. No. 3.)

272, 677.)[2] Plaintiff reported being sexually assaulted in the Navy and struggling with mental health, including three psychiatric hospitalizations. (R. at 256-257, 711.) In June 2016, Plaintiff injured herself while on the job at the VA and has not worked since. (R. at 255.) She now experiences significant leg and back pain and uses a walker when outside her home. (R. at 260-261.)

On February 9, 2017, Plaintiff filed applications under Titles II and XVI of the Social Security Act, seeking benefits beginning on June 15, 2016 for lower back problems, sciatica, swollen feet and numb hands, mental health, herniated discs, and arthritis. (R. at 272, 431, 437.) The Social Security Administration denied Plaintiff's claims initially on July 18, 2017 and again on reconsideration on November 2, 2017. (R. at 332, 363.) On December 30, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R. at 373.) ALJ Solomon Boyle held a hearing on September 17, 2018. (R. at 247-269.) Plaintiff was represented by counsel and testified at the hearing. (R. at 250-263.) Nicole Fuscaldo, a vocational expert ("VE"), also testified. (R. at 263-268.)

On January 8, 2019, the ALJ denied Plaintiff's application for benefits, finding Plaintiff not disabled at Step Four of the evaluation process. (R. at 24-35.)[3] At Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since June 15, 2016. (R. at 26.) At Step Two, the ALJ found Plaintiff has the following severe impairments: degenerative disc disease,

---

[2] The Administrative Record in this case can be found at Dkt. Nos. 9 & 10.

[3] In considering a disability claim, an ALJ must conduct a five-step evaluation that examines: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002) (citing 20 C.F.R. § 404.1520).

osteoarthritis, gastroesophageal reflux disease, obstructive sleep apnea, obesity, schizophrenia, bipolar disorder, posttraumatic stress disorder ("PTSD"), and cannabis dependence. (R. at 26-27.) At Step Three, the ALJ found Plaintiff's impairments or combination of impairments do not rise to the level of severity of impairments in the listings associated with disorders of the spine (Listing 1.04) or mental-health related disorders (Listings 12.03, 12.04, and 12.15). (R. at 27-29.) The ALJ found Plaintiff has the Residual Functional Capacity ("RFC") to perform light work with certain limitations, as described below. (R. at 29-33.) At Step Four, the ALJ found Plaintiff is capable of performing her past relevant work as a housekeeper and security guard. (R. at 33-34.) In the alternative, the ALJ found at Step Five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as mail clerk, laundry press operator, and photo copy machine operator. (R. at 34-35.) Therefore, Plaintiff is not disabled as defined under the Social Security Act. (R. at 35.)

Plaintiff appealed the ALJ's decision to the Appeals Council on March 4, 2019. (R. at 427.) On March 24, 2020, the Appeals Council denied Plaintiff's request for review. (R. at 1-5.) The ALJ's decision, therefore, represents the Commissioner's final decision in the case. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000) ("[Social Security Administration] regulations provide that, if . . . the [Appeals] Council denies the request for review, the ALJ's opinion becomes the final decision."). On June 1, 2020, Plaintiff filed this civil action under 42 U.S.C. § 405(g). (Dkt. No. 1.) In the appeal, Plaintiff argues the ALJ erred in failing to explore the link between her mental health impairments and physical symptoms. (Dkt. Nos. 12 & 23.)

## II.    STANDARD OF REVIEW

The court's review of a final decision of the Commissioner on a Social Security disability claim is exceedingly deferential. *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). "Our review

of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard.'" *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). When the Commissioner's decision is reached by applying improper legal standards, the decision is not supported by substantial evidence. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes 'more than a mere scintilla' but 'less than a preponderance' of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). "'Any findings of fact by the Commissioner which are supported by substantial evidence are conclusive.'" *Heck v. Colvin*, 674 F. App'x 411, 413 (5th Cir. 2017) (quoting *Taylor*, 706 F.3d at 602).

Even so, judicial review must not be "so obsequious as to be meaningless." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quotations omitted). The substantial evidence standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 822-23; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823. The court "'may not reweigh the evidence . . . , nor try the issues *de novo*, nor substitute [its] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.'" *Johnson v. Colvin*, 595 F. App'x 443, 444 (5th Cir. 2015) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)).

Summary judgment in social security cases, like others, is governed by Federal Rule of Civil Procedure 56. *See Temple v. Saul*, No. 19-CV-3320, 2020 WL 6075644, at *2 (S.D. Tex.

Oct. 14, 2020). Under Rule 56, summary judgment is proper when the record reflects that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "When parties file cross-motions for summary judgment, [courts] review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Cooley v. Hous. Auth. of City of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014) (quotations omitted).

### III.   DISCUSSION

Plaintiff argues the ALJ erred by failing to determine the extent to which her mental impairments impact her perception of pain and other physical symptoms. (Dkt. No. 12 at 7-8.) According to Plaintiff, the ALJ must explore whether physical symptoms that appear not to be caused by a physical impairment are actually caused or exacerbated by a mental health condition. (*Id.*; Dkt. No. 23 at 2-4.) Plaintiff particularly argues that the ALJ discounted her pain and need for a walker by finding she could perform light work; however, because the record contains evaluations linking Plaintiff's pain to her mental health conditions, she believes the ALJ should have explored the connection between the two. (Dkt. No. 12 at 8; Dkt. No. 23 at 3-4.)

Commissioner does not dispute that the ALJ was required to explore the link between Plaintiff's mental health and her physical symptoms. Instead, Commissioner argues that the ALJ did account for this link by creating a highly restrictive RFC that contains both mental and physical limitations. (Dkt. No. 20 at 6.) Commissioner also argues that the evidence does not support a finding that Plaintiff's pain is disabling as defined under the Social Security Act. (*Id.*) As a result, Commissioner believes the ALJ did not err. The Court agrees with Plaintiff.[4]

---

[4] Plaintiff makes several other arguments pertaining to the ALJ's RFC findings and treatment of medical opinion evidence. "Plaintiff may raise any appropriate arguments before the

### A.  The ALJ's Decision

As described above, the ALJ found that Plaintiff has severe degenerative disc disease, osteoarthritis, schizophrenia, bipolar disorder, and PTSD, among others, but that none of these conditions meet the listing requirements. (R. at 26-29.) The ALJ determined Plaintiff has the Residual Functional Capacity ("RFC")[5] to perform light work, which includes lifting up to twenty pounds at a time and standing or walking for up to six hours in an eight-hour workday. *See* SSR 83-10, 1983 WL 31251, at *5. The ALJ also found Plaintiff can never climb ladders, ropes, or scaffolds; can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; can understand, remember, and carry out routine tasks involving simple work-related instructions; and can never interact with the general public. (R. at 29.)

In explaining his RFC findings, the ALJ recounted Plaintiff's hearing testimony that she had been prescribed a walker because of her work-related injury, experienced shooting pain and swelling in her back and legs, and could barely get dressed or walk. (R. at 29.) The ALJ also recounted Plaintiff's testimony that she had been sexually assaulted in the Navy, diagnosed with PTSD, and psychiatrically hospitalized. (R. at 29.) The ALJ found that, although Plaintiff's impairments could cause the alleged symptoms, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 30.) The ALJ then stated "the objective medical

---

Commissioner on remand." *Littleton v. Comm'r of Soc. Sec.*, No. 16-CV-14, 2017 WL 1397128, at *6 (S.D. Tex. Feb. 22, 2017); *see Miller v. Saul*, No. 18-CV-1519, 2019 WL 5010621, at *9 (S.D. Tex. Aug. 12, 2019) (addressing only one of plaintiff's arguments, which required remand), *report and recommendation adopted*, 2019 WL 4994530 (Oct. 7, 2019).

[5] RFC is a "determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545(a)(1)).

evidence does not support the claimant's alleged subjective symptoms or functional limitations," citing to X-rays, MRIs, and other evaluations. (R. at 30.) As to Plaintiff's prescription and use of a walker, the ALJ determined there is "no indication that such an assistive device is medically necessary from an objective standpoint." (R. at 31.) The ALJ gave little weight to the opinion of Plaintiff's treating physician—who determined Plaintiff was "incapacitated from her work" due to her injury—because it is "unsupported by objective clinical findings and is inconsistent with the evidence considered as a whole." (R. at 30, 33.)

In other words, the ALJ discredited the severity of Plaintiff's alleged symptoms—particularly her alleged physical symptoms such as pain and immobility—due to the lack of objective medical evidence[6] and did not explain a potential connection between these symptoms and Plaintiff's mental health conditions. The ALJ then formulated the RFC and found Plaintiff able to perform her past relevant work and other jobs in the national economy.

### B. The ALJ Erred By Failing To Explore The Connection Between Plaintiff's Mental Health And Physical Symptoms, Resulting In Prejudice.

Under the Social Security regulations, the Commissioner must "develop evidence regarding the possibility of a medically determinable mental impairment when [there is] information to suggest that such an impairment exists, and [claimant] allege[s] pain or other symptoms but the medical signs and laboratory findings do not substantiate any physical impairment(s) capable of producing the pain or other symptoms." 20 C.F.R. § 404.1529(b). In other words, "[w]hen medical findings do not substantiate the existence of physical impairments capable of producing alleged pain and other symptoms, the ALJ must investigate the possibility

---

[6] The ALJ also noted that Plaintiff had not consistently treated her physical conditions, performed daily activities such as cleaning, and had experienced improvements in her mental health conditions. (R. at 32.)

that a mental impairment is the basis of the symptoms." *Latham v. Shalala*, 36 F.3d 482, 484 (5th Cir. 1994); *see also Scott v. Shalala*, No. 94-50096, 1994 WL 725034, at *3-4 (5th Cir. Dec. 19, 1994). This issue generally presents itself when there is evidence a claimant suffers from a somatoform disorder, which can be defined as "physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms." *Craig-Cook v. Colvin*, No. 13-CV-1243, 2014 WL 1386347, at *3 (N.D. Tex. Apr. 9, 2014) (quotations omitted); *see also Williams v. Comm'r of Soc. Sec. Admin.*, No. 11-CV-373, 2013 WL 1282460, at *6 (E.D. Tex. Mar. 27, 2013).[7]

Here, Plaintiff has not been diagnosed with somatoform disorder. However, she points to evidence in the record suggesting she suffers from significant pain and immobility in connection with her mental health. (*See* Dkt. No. 12 at 7-8; Dkt. No. 23 at 2-4.) For example, Plaintiff was referred to a clinical psychologist, Dr. Paul Sloan, due to the chronic pain in her back and legs from her work-related injury. (R. at 692-694.) Dr. Sloan performed a psychological evaluation of Plaintiff on March 9, 2017 and found:

> [Plaintiff] is experiencing significantly above average overall levels of pain-related impairment with all scores being above average. She is reporting severe symptoms of depression and anxiety with maximum scores on both measures. She is reporting above average levels of situational stress and has low levels of social support. She is experiencing significant pain-related catastrophizing with all domains on the [Pain Catastrophizing Scale].[8]

(R. at 694.) Dr. Sloan also noted that Plaintiff used a walker; had a "slowed and shuffling gait;" had a restricted, depressed, and anxious affect; and exhibited slowed speech and thought processes.

---

[7] "Notably, despite the lack of physical evidence, there is nothing imaginary or simulated about the patient's perception of his or her illness." *Craig-Cook*, 2014 WL 1386347, at *3 (quotations omitted).

[8] The Pain Catastrophizing Scale measures rumination, magnification, and helplessness. (*See* R. at 694.)

(R. at 694.) Dr. Sloan recommended therapy for depression. (R. at 694.) A second physician at the VA, Dr. Utpal Ghosh, also indicated the same day that Plaintiff "may benefit from pain psychology interventions." (R. at 704.)

Moreover, in a consult at the VA's Pain Evaluation Center, Plaintiff reported "feeling depressed, anxious, and frustrated which she relates to her pain." (R. at 707.) The evaluating doctor, Dr. Aruna Gottumukkala, determined that Plaintiff "has chronic pain secondary to Lumbar spondylosis without any neurological deficit, with her co-morbid psychiatric and psychosocial issues contributing significantly." (R. at 719.) Dr. Gottumukkala then found that Plaintiff's "recurrent clinical presentation of limited mobility and latent speech with anxious affect appear to be more related to her underlying [mental health] issues than her spondylosis." (R. at 720.) Ultimately, Dr. Gottumukkala diagnosed Plaintiff with "Pain Disorder with related psychological factors." (R. at 720.)

In other words, Plaintiff sought psychological treatment to alleviate her physical pain, the intensity and effects of which the ALJ found to be unexplained by her physical impairments. Three different physicians at the VA made observations, diagnoses, or treatment recommendations indicating they attribute Plaintiff's pain and lack of mobility to her mental health. This evidence implicates a somatoform or similar disorder. *See Scott*, 1994 WL 725034, at *4 ("It is the linking of a physical impairment, or the degree of a physical impairment, to a psychological cause that is important to a finding of a somatoform disorder."). At the very least, it implicates a link between Plaintiff's diagnosed mental health disorders—schizophrenia, bipolar disorder, and PTSD—and her physical symptoms. The ALJ was required to address this link. *See, e.g.*, *id.* (finding "the ALJ should have engaged in a detailed examination of whether [plaintiff's] medical records would support a finding of a somatoform disorder," despite lack of a specific diagnosis, because the

evidence demonstrated plaintiff's pain and difficulty walking may have been related to her psychological conditions); *Olivares v. Berryhill*, No. 16-CV-1220, 2018 WL 4035990, at \*9 (W.D. Tex. Aug. 23, 2018) (finding the ALJ erred by failing to explore the interaction between plaintiff's pain disorder, physical and mental limitations, and credibility).[9]

Commissioner argues the ALJ did not err because he "account[ed] for the combined effects of Plaintiff's mental and physical impairments in his highly restrictive residual functional capacity determination." (Dkt. No. 20 at 6.) The Court disagrees. An ALJ is always required to consider a claimant's mental and physical impairments in formulating the RFC. *See* 20 C.F.R. § 404.1545. Simply including both types of limitations does not necessarily mean the ALJ considered the connection between the two or, particularly, whether a claimant's unexplained physical symptoms are caused by mental health conditions. In fact, the ALJ here failed to meaningfully address the evidence described above[10] and instead primarily focused on the lack of objective medical evidence pertaining to Plaintiff's pain and immobility, further demonstrating that the ALJ did not appropriately consider this issue. *See Craig-Cook*, 2014 WL 1386347, at \*3 ("[T]he ALJ's findings regarding Plaintiff's impairments demonstrate a disregard or lack of understanding of the

---

[9] On the other hand, had there been no evidence of a link between Plaintiff's physical symptoms and mental health, the ALJ would not have been required to address this issue. *See, e.g.*, *Williams*, 2013 WL 1282460, at \*10 (finding the ALJ not required to address psychological causes of physical limitations when there "is no evidence that supports the notion that Plaintiff actually has a somatization disorder"); *Saucedo v. Astrue*, No. 07-CV-129, 2008 WL 4238908, at \*8 (N.D. Tex. Sept. 16, 2008) (finding the ALJ did not err in failing to address this issue when there was no evidence linking plaintiff's pain to a mental impairment).

[10] The ALJ did cite to Plaintiff's visit with Dr. Sloan in passing, stating only that "[o]n March 9, 2017, the claimant's affect was restricted and depressed" and "[h]er thought processes were slowed." (R. at 32.) This was apparently not in order to demonstrate that Plaintiff's mental status had improved, as it was followed by a description of Plaintiff's better mood. (R. at 32.) The ALJ said nothing about Dr. Sloan's findings that connect Plaintiff's pain to her mental health. The Court finds this insufficient to meet the requirements of the regulations and associated caselaw.

nature of [a somatoform] disorder. The lack of objective medical evidence that the ALJ repeatedly references in support of her finding of non-disability is [its] defining characteristic[.]"). The Court, therefore, finds the ALJ erred.

To the extent Plaintiff must show prejudice from this error, she has done so. (*See* Dkt. No. 23 at 3-4.) Had the ALJ considered the evidence described above and explored the link between Plaintiff's mental and physical health, he may have given more credibility to Plaintiff's subjective complaints of pain and immobility and, in turn, incorporated the use of a walker into the RFC or found Plaintiff cannot stand or walk for six hours per day.[11] In fact, the VE testified that if Plaintiff required the use of a walker to ambulate, she would not be able to perform her past relevant work or any jobs in the national economy. (R. at 266.) Consideration of Plaintiff's limitations in light of her mental health conditions certainly could have led to a different outcome. *See Castleberry v. Berryhill*, No. 16-CV-3104, 2017 WL 7796206, at *12-13 (S.D. Tex. Oct. 3, 2017) (finding prejudice where the VE testified that certain limitations not found by the ALJ, but which were potentially applicable to plaintiff, would result in no jobs in the national economy plaintiff could perform), *report and recommendation adopted*, 2017 WL 7796189 (Nov. 1, 2017).

In any event, it is not appropriate for the Court to evaluate the impact of this evidence in the first instance. *See, e.g.*, *Scott*, 1994 WL 725034, at *4 ("While it is possible that the whole of

---

[11] Plaintiff's walker was prescribed on June 22, 2016, after her work-related injury. (R. at 629.) Her use of a walker is well-documented throughout the record. (*See, e.g.*, R. at 648 (noting Plaintiff used walker at mental health appointment); R. at 666 (noting Plaintiff uses walker every day for primary mobility); R. at 692 (noting Plaintiff has used a walker since her accident and can walk only from the curb to her car without stopping to rest).) The same is true for her pain and immobility. (*See, e.g.*, R. at 588 (reporting pain as 6/10 or 7/10); R. at 666 (reporting pain as constant, sharp, and throbbing); R. at 693 (reporting significantly elevated levels of pain); R. at 1172 (noting that Plaintiff reported pain as 10/10 and that she had significant difficulty getting on the examination table at an appointment).)

the record might not support a finding that [plaintiff] suffers from a severe somatoform disorder, that determination should be made only after the detailed examination of the record that the ALJ erroneously avoided."); *Craig-Cook*, 2014 WL 1386347, at *3-4 (finding that the ALJ's "failure to consider Plaintiff's documented somatoform disorder affected her evaluation of Plaintiff's severe impairments, credibility, and RFC assessment" and remanding so the ALJ could consider the evidence "in the first instance"); *Garcia v. Colvin*, No. 12-CV-50, 2013 WL 1932851, at *10 (S.D. Tex. May 8, 2013) (finding plaintiff prejudiced by the ALJ's failure to address the connection between her mental and physical conditions because, had the ALJ done so, he might have given more credibility to plaintiff's subjective physical complaints). The case should be remanded.[12]

## IV.    CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** Plaintiff's Motion for Summary Judgment (Dkt. No. 12) be **GRANTED**, Commissioner's Motion for Summary Judgment (Dkt. No. 13) be **DENIED**, and the case be **REMANDED** for further proceedings.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant

---

[12] The Court recognizes that § 404.1529(b) contains language indicating it applies when a claimant has no physical impairment that could cause the physical symptoms and not necessarily, as here, when a claimant does have a physical impairment—a back injury—that could cause the symptoms but the severity of those symptoms is not supported. However, the Court believes the ALJ should still have explored the relationship between Plaintiff's mental health and physical symptoms based on the facts of this case, as her mental health conditions could certainly exacerbate the severity of her pain or immobility. In any event, the ALJ only referred to Plaintiff's pain generally and did not clarify whether he connected Plaintiff's leg pain to her back injury. If the leg pain is not connected to a known physical impairment, the plain language of § 404.1529(b) would certainly apply. *See, e.g.*, *Garcia*, 2013 WL 1932851, at *10 (finding § 404.1529(b) applied when the ALJ failed to address the connection between plaintiff's mental health and numbness in his right leg, even though the ALJ had found plaintiff's other limitations had known physical causes). The ALJ should, at the very least, clarify this issue.

to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the Undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas on May 7, 2021.

Sam S. Sheldon
United States Magistrate Judge